# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH R. SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. CIV-13-688-R ) |
| ALLIED STEEL CONSTRUCTION COMPANY, LLC., | ) ) ) |
| Defendant. | ) |

## ORDER

This matter comes before the Court on the Motion for Summary Judgment, filed by Defendant, Allied Steel Construction Company, LLC (Doc. No. 20). Plaintiff, Kenneth Smith, responded in opposition to the motion. For the reasons set forth herein, the motion is DENIED.

Plaintiff was employed by Defendant as an ironworker foreman when he suffered an on-the-job injury in 2010, which subsequently required surgical intervention. Defendant terminated Plaintiff on August 23, 2013, when it determined Plaintiff was permanently disabled and unable to perform his job. Plaintiff contends that despite the effects of his injuries, he could perform the essential functions of his job, and that Defendant's decision to terminate him violated the Americans with Disabilities Act ("ADA").

The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to "discharge of employees." 42 U.S.C. § 12112(a). Although the burden-shifting

analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies in ADA cases where a Plaintiff lacks direct evidence of discrimination, contrary to the parties' arguments, the analysis is not appropriate in this case. Rather, "[i]f the employer admits that the disability played a prominent part in the decision . . . the burden-shifting framework may be unnecessary and inappropriate." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n. 3 (10th Cir. 1997)(citation omitted). Here, because Defendant admits it terminated Plaintiff because of his disability[1], the case revolves around whether Plaintiff can establish that he was "otherwise qualified" to perform the "essential functions" of his job as ironworker foreman. *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189 (10th Cir. 2003)(citations omitted).

> The term "qualified individual" means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8). In interpreting the ADA, the Tenth Circuit utilizes a two-step approach to determining whether Plaintiff was qualified.

> First, the court determines whether the individual can perform the essential functions of the job. [*Aldrich v. Boeing Co.*, 146 F.3d 1265, 1271 (10th Cir. 1998)] Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer wold enable him to perform those functions.

---

[1] Randy Sudik, president of Allied Steel, asserted in an affidavit:
On or about August 3, 3012, after learning of Smith's injury-related physical limitations and medically imposed restrictions based on the opinion of his treating physician that Smith could not satisfy the requirements of his job description, Allied terminated Plaintiff's employment because he was unable to perform the essential functions of the job of Ironworker Foreman, the position he occupied prior to the Injury.
Affidavit of Sudik, ¶ 7.

2

*Davidson*, 337 F.3d at 1190. The term "essential function" is defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). "The term 'essential functions' does not include the marginal functions of the position." *Id.*

Whether a particular job function is essential is a factual inquiry. *Davidson*, 337 F.3d at 1190. 42 U.S.C. § 12111(8) provides that in assessing whether functions are essential, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." This evidence, however, is not conclusive, and "an employer may not turn every condition of employment which it elects to adopt into a job function let alone an essential job function merely by including it in a job description." *Id.* (quoting *Echazabal v. Chevron USA, Inc.*, 226 F.3d 1063, 1071 (th Cir. 2000), *rev's on other grounds*, 536 U.S. 73 (2002)). In assessing whether a function is essential, the Court considers a variety of factors, including (1) whether the employer actually requires all employees in the particular position to satisfy the alleged job-related requirement; (2) the employer's judgment as to which functions are essential; (3) Written job descriptions prepared before advertising or interviewing applicants for the job; (4) the amount of time spent on the job performing the function; (5) the consequences of not requiring the incumbent to perform the function; (6) The terms of a collective bargaining agreement; (7) the work experience of past incumbents

in the job; and/or (8) The current work experience of incumbents in similar jobs. *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1262 (10th Cir.2009); 29 C.F.R. § 1630.2(n)(3).

In this case Defendant relies on a job description and the opinion of Plaintiff's treating physician to conclude that Plaintiff cannot perform the essential functions of his job, although Defendant does not attempt to address the elements set forth above. Defendant's evidence references two job descriptions, one which was apparently created in 1992, when Allied Steel was part of another entity, and which was apparently never provided to any employee other than the corporate president, Randall Sudik.[2] In 2011, Michael Trumble, Defendant's Safety Director, provided a separate job description to the claims administrator for Defendant's worker's compensation plan. The administrator in turn apparently provided the description to Plaintiff's treating physician for purposes of assessing Plaintiff's permanent abilities`.[3] The second page of requirements submitted by Mr. Trumble allegedly stem from International Ironworkers Local 48, although there is no evidence that the union provided the

---

[2] The 1992 job description appears irrelevant to the outcome of this case in light of Randall Sudik's testimony that the Defendant's decision to terminate Plaintiff was based on the letter from Plaintiff's treating physician, who relied on the 2011 job description.

[3] Dr. Hargrove, Plaintiff's treating physician, drafted a letter dated August 2, 2012, stating:
I had an opportunity to review the job description which is a form dated May 10, 2011. The duties described on the first page of the letter would be acceptable in accordance to the patient's current limitations. However, on page two, there is a question about his ability to work at high levels, his ability to perform physical activities, including balancing, stooping and climbing and also his ability to exert maximal muscle forces. Also, there is a question about ability to exert "yourself physically over a long period of time without getting winded or out of breath."
∗∗∗
[I]t appears that the patient's current abilities are inconsistent with that job description as is listed per Allied Steel in that letter dated May 10, 2011.

4

description in response to a request for the requirements of the job of ironworker foreman. Further, Plaintiff contends that the second page of the job description actually describes the requirements of an ironworker, rather than the supervisory ironworker foreman.

With regard to the functions listed on page two of the 2011 job description, Plaintiff testified, "[o]n all this stuff right here, we don't do all that. I mean we do occasionally some of it. But most of the time you are – this first page, if you read the first page, that is what our job is. Second page, that is – I would do some of that stuff occasionally, but never every day." Smith, Deposition, p. 30. Plaintiff characterized his employment:

> My job duties involved directing and supervising employees; evaluating their job performance; disciplining employees; conducting safety meetings; keeping time records; filling out accident reports; reviewing work descriptions, blueprints, and drawings for a particular project; and coordinating, interfacing, and communicating with the owners, general contractor, architects, engineers, and supervisors for other subcontractors on a particular project.

Affidavit of Smith, ¶ 9.

The Court finds that genuine issues of material fact remain for resolution at trial with regard to the first part of the analysis of whether Plaintiff was qualified for his role as ironworker foreman, that is could he perform the essential functions of his job, and what were those essential functions. Plaintiff also testified that between his shoulder surgery in 2011 and his knee surgery in 2012, that he successfully fulfilled this obligations as ironworker foreman, supporting his contention that he was able to perform the essential

functions of his job.[4]  Accordingly, Defendant is not entitled to summary judgment on Plaintiff's ADA claim.

Furthermore, the fact that Defendant paid for Plaintiff to undergo vocational training is not outcome determinative of this case. The question presented by this case is whether Plaintiff, with or without reasonable accommodations, could perform the essential functions of his job as ironworker foreman.

For the reasons set forth above, Defendant's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED this 24th of July, 2014.

*David L. Russell* (signature)
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff first had surgery on his shoulder in February 2011, which resulted in imposition of a five-pound weight limitation. Plaintiff apparently returned to work shortly thereafter, at Defendant's request, with what Defendant characterizes as assistance from employees to compensate for the restriction. Defendant concedes any assistance was terminated in September 2011 and there is apparently no dispute that Plaintiff performed his job thereafter without assistance until the time of his knee surgery in march 2012.